**United States District Court**
For the Northern District of California

1

2

3

4

5                UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8    GLORIA MARTINEZ,                        No. C-12-1824 EMC

9              Plaintiff,

10        v.                                 **ORDER GRANTING DEFENDANTS'
                                             MOTION TO DISMISS**
11   KAISER FOUNDATION HOSPITALS, *et
     al.*,                                   **(Docket No. 7)**
12             Defendants.
13   _____/

14

15         Plaintiff Gloria Martinez has filed suit against Defendants Kaiser Foundation Hospitals, the

16   Permanente Medical Group, Inc., and Service Employees International Union ("Union").  As against

17   the Union, Ms. Martinez has asserted claims for discrimination based on age and disability and for

18   breach of the duty of fair representation.  Currently pending before the Court is the Union's motion to

19   dismiss or, in the alternative, for summary judgment.  For the foregoing reasons, the Court **GRANTS**

20   the motion but gives Ms. Martinez leave to amend to address the deficiencies discussed below.

21              **I.    FACTUAL & PROCEDURAL BACKGROUND**

22         In her complaint, Ms. Martinez alleges as follows.

23         Ms. Martinez was an employee of the Kaiser entities.  On an unspecified date, the Kaiser

24   entities constructively discharged her.  The Kaiser entities illegally harassed her and eventually

25   terminated her employment based on her age (59 years and 11 months at the time of termination)

26   and her disability (diabetes).  *See* Compl. ¶¶ 12-15, 25-29.

27         According to Ms. Martinez, her age and disability were also motivating factors behind the

28   Union's conduct, more specifically, its "failure to provide quality union representation, failure to

**United States District Court**
For the Northern District of California

1  investigate her grievances against [the Kaiser entities], and failure to advocate for [her] in

2  disciplinary meetings and upon [the Kaiser entities'] notice of . . . decision to terminate [her]

3  employment." Compl. ¶¶ 16, 30. Ms. Martinez maintains that the Union knew of the Kaiser

4  entities' discriminatory conduct but failed to file and pursue appropriate grievances. *See* Compl. ¶¶

5  16, 30. It is not clear whether the Union failed to pursue only the grievance related to the

6  constructive discharge or whether there are other grievances that were not pursued as well. Ms.

7  Martinez claims that, in similar circumstances, the Union provided more favorable representation to

8  younger, non-disabled members. *See* Compl. ¶¶ 16, 30.

9       In addition to the above, Ms. Martinez claims that the Union violated her rights because it

10  failed to comply with its duty of fair representation. Ms. Martinez asserts that the Union breached its

11  duty

12           by failing to investigate her claims against [the Kaiser entities], giving
             [her] false and erroneous information and advice, failing to keep [her]
13           apprised of the status of the [U]nion's actions and involvement
             regarding her termination, and failing to pursue a grievance and/or
14           arbitration on her behalf without good faith and for arbitrary,
             capricious, and discriminatory reasons.
15

16  Compl. ¶ 58.

17       Based on, *inter alia*, the above allegations, Ms. Martinez has asserted the following claims

18  against the Union[1]: age discrimination in violation of the California Fair Employment and Housing

19  Act ("FEHA"); disability discrimination in violation of the same; breach of the duty of fair

20  representation; and intentional infliction of emotional distress.

21       Although the Union is moving to dismiss each claim pursuant to Federal Rule of Civil

22  Procedure 12(b)(6), it has asked the Court to take into consideration certain evidence outside the

23  four corners of the complaint, including excerpts of the Kaiser entities' collective bargaining

24  agreement with the Union, Ms. Martinez's "resignation" letter dated April 14, 2011, discipline

25  documents issued by the Kaiser entities, and Ms. Martinez's unfair labor practice charge against the

26  Union. *See generally* Harland Decl. The Union argues that the evidence may be considered because

27

28       [1] Additional claims have been asserted against the Kaiser entities.

2

**United States District Court**
For the Northern District of California

1    the Ninth Circuit has held that, "[e]ven if a document is not attached to a complaint, it may be

2    incorporated by reference into a complaint if the plaintiff refers extensively to the document or the

3    document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th

4    Cir. 2003); *see also Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("hold[ing] that a

5    district court ruling on a motion to dismiss may consider a document the authenticity of which is not

6    contested, and upon which the plaintiff's complaint necessarily relies"). Alternatively, the Union

7    asks that the Court construe the motion to dismiss as one for summary judgment. *See* Mot. at 6. For

8    Rule 12(b)(6) purposes, the Court may consider the excerpts of the collective bargaining agreement,

9    the "resignation" letter, and the NLRB-related papers. As these appear to be the critical documents

10   (and not, *e.g.*, the discipline documents issued by the Kaiser entities), it is not necessary for the

11   Court to convert the motion into one for summary judgment.

## II.  DISCUSSION

13   A.      Legal Standard

14          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

15   failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to

16   dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks*

17   *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court

18   must take all allegations of material fact as true and construe them in the light most favorable to the

19   nonmoving party, although "conclusory allegations of law and unwarranted inferences are

20   insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

21   2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

22   facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when

23   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

24   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

25   *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

26   a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

27   unlawfully." *Iqbal*, 129 S. Ct. at 1949.

28

**United States District Court**
For the Northern District of California

B.     Preemption of State Law Claims

In its motion, the Union argues that each of Ms. Martinez's state law claims – *i.e.*, age pursuant to FEHA, disability discrimination pursuant to FEHA, and intentional infliction of emotional distress – is preempted by federal law, more specifically, by § 301 of the Labor Management Relations Act ("LMRA"), *see* 29 U.S.C. § 185, and by § 9 of the National Labor Relations Act ("NLRA"). *See id.* § 159. The Union has the burden of establishing preemption. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) (indicating that ordinarily preemption is an affirmative defense); *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005) (noting that the defendant has the burden of establishing complete preemption).

1.     Section 301 of the LMRA

Section 301 of the LMRA provides in relevant part that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Although "[s]ection 301 is on its face a jurisdictional statute," the Supreme Court has held that it "authorize[s] the federal courts to develop a federal common law of CBA [collective bargaining agreement] interpretation" and that "this federal common law preempts the use of state contract law in CBA interpretation and enforcement." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001).

"In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the [Supreme] Court expanded application of § 301 preemption beyond cases specifically alleging contract violation to those whose resolution 'is *substantially dependent* upon analysis of the terms of an agreement made between the parties in a labor contract.'" *Cramer*, 255 F.3d at 689 (emphasis added). In *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399 (1988), the Supreme Court clarified that "states may provide substantive rights to workers that apply without regard to a CBA; a state court suit seeking to vindicate these rights is preempted only if it 'requires the *interpretation* of a collective-bargaining agreement.'" *Cramer*, 255 F.3d at 690 (emphasis added). Finally, in *Livadas v. Bradshaw*, 512 U.S. 107 (1994), the Supreme Court emphasized that

[t]he preemption rule has been applied only to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, nor by parties' efforts to renege on their arbitration promises by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.

In [prior case law] . . . we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed it is the legal character of a claim, as independent of rights under the collective-bargaining agreement (and not whether a grievance arising from precisely the same set of facts could be pursued) that decides whether a state cause of action may go forward.  Finally, we were clear that *when the meaning of contract terms is not the subject of dispute*, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished

*Cramer*, 255 F.3d at 690 (internal quotation marks omitted; emphasis added).

The Ninth Circuit has noted that, not surprisingly, "[t]he demarcation between preempted claims and those that survive § 301's reach is not . . . a line that lends itself to analytical precision" – after all, "'[s]ubstantial dependence' on a CBA is an inexact concept." *Id.* at 691.  Still, there are some "interpretive principles" given the Supreme Court case law, including those cases cited above, namely:

If the plaintiff's claim cannot be resolved without interpreting the applicable CBA – as, for example, in *Allis-Chalmers*, where the suit involved an employer's alleged failure to comport with its contractually established duties – it is preempted.  Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA – as, for example, in *Lingle*, where the plaintiff was able to litigate her retaliation suit under state law without reference to the CBA – it is not preempted.  The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim.  *If the claim is plainly based on state law, § 301 pre-emption is not mandated simply because the defendant refers to the CBA in mounting a defense.*

Moreover, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA.  A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility.  The argument does not become credible simply because the court may have to consult the CBA to evaluate it; "looking to" the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption.

*Id.* at 691-92 (emphasis added).  At bottom, "[a] state law is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute."  *Id.* at 693.

a.   <u>Discrimination Claims</u>

In her state law discrimination claims, Ms. Martinez asserts that the Union "fail[ed] to provide quality union representation, fail[ed] to investigate her grievances against [the Kaiser entities], and fail[ed] to advocate for [her] in disciplinary meetings and upon [the Kaiser entities'] notice of . . . decision to terminate [her] employment" because of her age and disability.  Compl. ¶¶ 16, 30.  Ms. Martinez claims that, in similar circumstances, the Union provided more favorable representation to younger, non-disabled members.  *See* Compl. ¶¶ 16, 30.

As Ms. Martinez points out, the Ninth Circuit has applied the following test in determining whether a discrimination claim brought pursuant to the FEHA was preempted by § 301:

> (1) Does the CBA contain provisions that govern the actions giving rise to the state claim?  (2) Is the state statute "sufficiently clear" so that the claim can be evaluated without consideration of overlapping provisions in the CBA?  (3) Has the state shown an intent not to allow the statute to be altered or removed by private contract?  Under this analysis, "[a] state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'"

*Espinal v. Northwest Airlines*, 90 F.3d 1452, 1457 (9th Cir. 1996).

The first prong above requires a court to determine "'whether the CBA must serve as the measuring rod in determining whether [the defendant] acted reasonably.'"  *Id.*  In the instant case, the Union did not – as a part of its opening brief – specifically point to any specific provision in the collective bargaining agreement that constitutes the measuring rod.  It was only in its reply brief that the Union specifically identified the discipline and grievance provisions of the collective bargaining agreement as the measuring rod.  *See*  Harland Decl., Ex. A (excerpts of collective bargaining agreement).  Given these circumstances, the Court should arguably consider this particular argument waived.

Even if the Court does not consider the argument waived, on the merits, the argument is problematic.  First, the Union ignores the fact that Ms. Martinez's discrimination claim is predicated not only on the failure to pursue the grievance on the constructive discharge but also on the failure to

**United States District Court**
For the Northern District of California

1   investigate grievances in the first place.  The discipline and grievance provisions in the collective

2   bargaining agreement do not address in any way the Union's duty to investigate grievances.  Thus,

3   as to this particular misconduct, there is no measuring rod in the collective bargaining agreement.

4          Second, the Union argues that, to determine whether it should pursue the grievance on the

5   constructive discharge, it had to evaluate whether the grievance had any merit, which would depend

6   on whether the termination was based on "just cause" as required by the collective bargaining

7   agreement.  *See* Harland Decl., Ex. A (CBA Art. XXI, § 1(a)) (requiring just cause for discipline).

8   Essentially, the Union seems to be arguing, as a defense to the discrimination claim, that it had a

9   legitimate nondiscriminatory reason not to pursue the grievance (*e.g.*, because there was just cause

10  for the Kaiser entities' discipline).  But the Ninth Circuit has held that "reliance on CBA provisions

11  to *defend* against an independent state law claim does not trigger § 301 preemption."  *Humble v.*

12  *Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002) (emphasis added) (rejecting defendant's argument

13  that, "when it offers a nondiscriminatory justification for its conduct by relying on authorizing CBA

14  provisions, that suffices to trigger preemption of [plaintiff's] reasonable accommodation claim").

15  Otherwise, virtually every claim of discrimination in regard to a union's administration of a

16  member's rights under a CBA would be preempted since invariably a defendant union is likely to

17  claim just cause in defense.  Such a sweeping result appears inconsistent with *Lingle*.

18         Finally, the Union argues that, for the Court to evaluate whether the Union should have

19  pursued the grievance, it will have to look to and interpret and grievance provisions of the collective

20  bargaining agreement.  Arguably, the Court will need to look at the grievance provisions to evaluate

21  what would constitute pursuit of a grievance.  But just because the Court may need to look at the

22  grievance provisions, it is far from clear that the Court will have to interpret them.  The Union has

23  failed to point to any dispute about the meaning of any terms in the grievance provisions; thus,

24  resolution of the discrimination claims cannot be said to be substantially dependent upon the

25  analysis of the terms of the collective bargaining agreement.  *See Detabali v. St. Luke's Hosp.*, 482

26  F.3d 1199, 1203 (9th Cir. 2007) (stating that, "because there is no dispute over the meaning of any

27  terms within the agreement, . . . resolution of the central issue – whether [the employer]

28

1  discriminated against [the plaintiff] in applying the agreement – does not depend on interpretation of

2  the collective bargaining agreement").

3       Accordingly, the Court concludes that there is no § 301 preemption based on the first prong

4  alone.  However, even if the Court were to rule against Ms. Martinez on the first prong, the second

5  and third prongs both weigh in her favor.

6       With respect to the second prong, a court "must determine whether the state right is based

7  upon a sufficiently clear standard, or whether the claim is so intertwined with the operation of the

8  CBA that it cannot be assessed without consideration of the CBA's overlapping provisions.  This

9  inquiry focuses on the independence of the state claim." *Espinal*, 90 F.3d at 1457.  Most courts have

10  held that "FEHA violations arise independently of a CBA." *Evans v. Southern Cal. Gas Co.*, No.

11  CV 09-01630 DDP (AJWx), 2009 U.S. Dist. LEXIS 84206, at *21 (C.D. Cal. July 20, 2009).  As

12  noted by Judge Breyer, "[t]hese cases rest upon the view that the rights conferred by the [FEHA] are

13  defined and enforced under state law without reference to the terms of any collective bargaining

14  agreement." *Guidry v. Marine Engineers' Beneficial Ass'n*, No. C 05-03960 CRB, 2007 U.S. Dist.

15  LEXIS 21353, at *11-12 (N.D. Cal. Mar. 6, 2007) (noting that, "[i]n general, the Ninth Circuit has

16  held that claims of discrimination under California's [FEHA] are not preempted by federal law").

17       There is no reason for the Court to rule any differently in this case.  To the extent the Union

18  relies on *Audette v. International Longshoremen's & Warehousemen's Union*, 195 F.3d 1107, 1112

19  (9th Cir. 1999), and *Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F. Supp.

20  2d 1244 (C.D. Cal. 2000), those cases are the exception and not the rule.  Indeed, Judge Breyer has

21  characterized the cases as being "narrow" exceptions – "state-law claims are preempted only when

22  the resolution of an allegation of discrimination *itself* hinges on the interpretation of a labor

23  contract." *Guidry*, 2007 U.S. Dist. LEXIS 21353 at *13 (emphasis in original).  In *Humble*, the

24  Ninth Circuit similarly underscored that *Audette* was an unusual case:

26       In *Audette*, plaintiffs brought suit for breach of a settlement
     agreement between union employees and their employer, when the
     agreement implicated a variety of CBA provisions.  As described by

27       the court, the plaintiffs' state law discrimination claim "turned on
     whether defendants' alleged failure to perform the settlement

28       agreement was motivated by retaliation or discrimination." *The state*

> *law discrimination claim therefore was not a free-standing claim of discrimination, but substantially depended on proving a violation of the settlement agreement, which had expressly incorporated the CBA's grievance procedures and which depended on interpretation of CBA terms.  Audette* was therefore like *Allis-Chalmers*, in which the Supreme Court held a state law tort of bad-faith preempted because it depended on identifying and proving a breach of the CBA as a necessary component of the claim.

*Humble*, 305 F.3d at 1012 n.38 (emphasis added).  Here, the complaint asserts a claim of *differential treatment* with respect to those similarly situated; it is that treatment more than the meaning of the CBA that is the center of dispute.

As for the third prong, *i.e.*, whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract, the Ninth Circuit has held that California has expressed such an intent in FEHA – more specifically, through California Government Code § 12920 which "explicitly establish[es] the right to employment without discrimination based on physical handicap [as well as other characteristics, including age] as a public policy of the state." *Jimeno*, 66 F.3d at 1528.  Moreover, California Civil Code § 3513 provides that, while "[a]ny one may waive the advantage of a law intended solely for his benefit[,] . . . a law established for a public reason cannot be contravened by a private agreement."  Cal. Civ. Code § 3513.

Accordingly, the Court concludes that the discrimination claims are not preempted pursuant to § 301.

    b. <u>Claim for Intentional Infliction of Emotional Distress</u>

The Union argues still that, at the very least, Ms. Martinez's claim for intentional infliction of emotional distress is preempted pursuant to § 301.  As indicated in the complaint, the claim for intentional infliction of emotional distress is based upon the Union's "discriminat[ion] against [her] based on her age and disability" and its "fail[ure] to represent [her] interests . . . for arbitrary, capricious[,] and/or discriminatory reasons."  Compl. ¶ 66.  Essentially, this boils down to a claim for intentional infliction of emotional distress based on discrimination.  Thus, for reasons similar to above, there is no preemption of the emotional distress claim.  *Compare, e.g.*, *Oraha v. BCI Coca-Cola Bottling Co.*, No. C 98-03676 MJJ, 1999 U.S. Dist. LEXIS 1388, at *8 (N.D. Cal. Feb. 2, 1999) (concluding that claim for intentional infliction of emotional distress was not preempted

1  because "the basis of the plaintiff's emotional distress claim in this case is discriminatory treatment"

2  and, "[s]ince the CBA almost certainly does not contemplate discriminatory treatment, and since the

3  defendants do not argue that it does, compliance with the CBA cannot temper the potential

4  'outrageousness' of the alleged conduct"), *with Wood v. Pacific Gas & Elec. Co.*, No. C-00-0052,

5  2000 U.S. Dist. LEXIS 6120, at *9-10 (N.D. Cal. Apr. 25, 2000) (concluding that claim for

6  intentional infliction of emotional distress was preempted because the claim arose "from the same

7  circumstances as his disability discrimination and retaliation claims" and "the CBA sets forth

8  specific standards concerning actions which are the basis of Plaintiff's disability discrimination and

9  retaliation claims").  This is not a case where "[t]he outrageousness of [the Union's actions] could

10  depend on whether the behavior violated the terms of the CBA."  *Miller v. AT&T Network Sys.*, 850

11  F.2d 543, 551 (9th Cir. 1988) (finding preemption "[b]ecause the emotional distress claim requires

12  consideration of [the] reasonableness of AT&T's behavior, which in turn could depend on whether

13  that behavior violated the collective bargaining agreement"); *see also Cook v. Lindsay Olive*

14  *Growers*, 911 F.2d 233, 239 (9th Cir. 1990) (finding preemption because, "[f]or this court to

15  determine whether LOG acted outrageously in firing him would require us to evaluate, as the

16  grievance committee did, whether LOG complied with the terms of the CBA regulating seniority

17  and work transfers").  Again, the focus is on discriminatory treatment, rather than the substantive

18  provisions of the CBA.

19      2.   <u>Section 9 of the NLRA</u>

20      That § 301 preemption is not applicable, however, does not end the analysis.  As noted

21  above, the Union also argues preemption pursuant to § 9 of the NLRA.  Section 9 provides in

22  relevant part as follows:

23          Representatives designated or selected for the purposes of collective
        bargaining by the majority of the employees in a unit appropriate for
24          such purposes, shall be the exclusive representatives of all the
        employees in such unit for the purposes of collective bargaining in
25          respect to rates of pay, wages, hours of employment, or other
        conditions of employment . . . .

26

27  29 U.S.C. § 159(a).  Courts have held that § 9 gives rise to a duty on the part of union to fairly

28  represent its members.

**United States District Court**
For the Northern District of California

> As the exclusive bargaining representative of the workers, the union has "'a duty to exercise [its] power in their interest and behalf.'"  "[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith.'"  "The duty of fair representation is thus akin to the duty owed by other fiduciaries to their beneficiaries."

*Simo v. Union of Needletrades*, 316 F.3d 974, 981 (9th Cir. 2003).

Contrary to what Ms. Martinez argues, the Ninth Circuit has held that there can be preemption of state law claims when they implicate the duty of fair representation.  In *Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008), the Ninth Circuit expressly so held.[2]  More specifically, the court held that

> [t]he federal statutory duty which unions owe their members to represent them fairly also displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative. . . . To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship.  Such duties must derive from sources other than the union's status as its members' exclusive collective bargaining representative, such as an express provision of the collective bargaining agreement or a collateral contract.

*Id.* at 539-40; *see also BIW Deceived v. Local S6, Indus. Union of Mar. & Shipbuild'g Workers of Am.*, 132 F.3d 824, 830 (1st Cir. 1997) (holding that "state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation"); *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1166-67 (5th Cir. 1989) (concluding that, "[b]ecause the plaintiffs in this case alleged that the Union breached a duty that arose from its status as their exclusive collective bargaining agent under the NLRA, [Supreme Court precedent] requires that this duty be defined by federal law"; plaintiffs had sued the union for failing to warn them of the employer's statutory right to replace them).

    a.    <u>Discrimination Claims</u>

Applying the standard laid out by the Ninth Circuit in *Adkins*, the Court holds that the discrimination claims are not preempted by § 9 of the NLRA.  The duty not to discriminate arises

---

[2] Because the Ninth Circuit has so held, this Court need not entertain Ms. Martinez's argument that there should be no preemption because the duty of fair representation is a judicial creation, and not a congressional one.

United States District Court
For the Northern District of California

from a source other than the Union's status as its members' exclusive collective bargaining representative – *i.e.*, the duty under FEHA.  While the duty of fair representation may also provide a remedy for the alleged discrimination, that does not mean that the right to obtain a remedy based on an independent source is thereby be negated and displaced.  As the Ninth Circuit explained in *Ackerman v. Western Electric Co., Inc.*, 860 F.2d 1514 (9th Cir. 1988), FEHA conferred upon employees certain rights not be discriminated against; just because the plaintiff "may also have separate remedies under the bargaining agreement [*e.g.*, the agreement included a general clause that broadly prohibited discrimination on the basis of race, sex, age, disability, and so forth] makes no difference." *Id.* at 1517; *see also Humble*, 305 F.3d at 1009 (stating that, "just because a CBA provides a remedy or duty related to a situation that is *also* directly regulated by non-negotiable state law does not mean the employee is limited to a claim based on the CBA").

There is authority that supports the Union's position that there should be preemption – for example, *Madison*, 132 F. Supp. 2d at 1244, the main case upon which the Union relies.  In *Madison*, the court seemed to conclude that there should be preemption of the plaintiff's discrimination claims simply because the duty of fair representation already prohibits discrimination.  *See id.* at 1258 (noting that "[t]he federal duty of fair representation prohibits a union from discriminating against any employee in fulfilling its representative functions[;] Madison's state discrimination claims concerning the negotiation of the CBA hiring provisions do not seek to enforce obligations exceeding those imposed by federal law, and the claims are thus subsumed within the duty of fair representation").  But, as noted above, under Ninth Circuit precedence, just because the duty of fair representation may provide a remedy does not displace a right to obtain a parallel remedy based on another source.  Moreover, *Madison* is a pre-*Adkins* case so it did not involve application of the standard articulated by the Ninth Circuit in *Adkins*.  Finally, from a policy standpoint, the *Madison* approach would be sweeping.  State discrimination claims would be all but eviscerated where the discrimination was conducted by a union in conjunction with its representation activities vis-a-vis union members.

The Court acknowledges that there is post-*Adkins* authority that also favors the Union.  For example, in *Guidry v. Marine Engineers*, No. C 11-05347 CRB, 2012 U.S. Dist. LEXIS 25745 (N.D.

United States District Court

For the Northern District of California

1   Cal. Feb. 28, 2012), Judge Breyer found that there was § 9 preemption of the plaintiff's FEHA and

2   emotional distress claims because "his allegations stem[med] entirely from [the union's] conduct on

3   his behalf" – *i.e.*, the claims invoked rights derived from the union's duty of fair representation. *Id.*

4   at *9.  However, Judge Breyer did not apply the specific standard laid out by the Ninth Circuit in

5   *Adkins*.  *See id.* at *7 (stating that "[t]he Ninth Circuit has not determined whether such a re-

6   characterization of a plaintiff's state law claims is required when the claims challenge a union's

7   representational activities").  The Court thus respectfully declines to follow Judge Breyer's decision

8   in *Guidry*.

9        Notably, there is post-*Adkins* authority favorable to Ms. Martinez.  In particular, *Swain v.*

10  *Dywidag-Systems International USA, Inc.*, No. C 09-01096 JW, 2009 U.S. Dist. LEXIS 47263 (N.D.

11  Cal. June 4, 2009), Judge Ware concluded that there was no § 9 preemption of the plaintiff's FEHA

12  claims because "Plaintiff's claims do not *depend* on [the union representatives'] duty of fair

13  representation.  Rather, Plaintiff alleges that [the union representatives] engaged in conduct that

14  itself was discriminatory and constituted retaliation for her opposition to the conduct of Defendant

15  Dywidag [the employer]."  *Id.* at *16-17 (emphasis added).  This Court concludes that *Swain* is more

16  consistent with *Adkins* than *Guidry*.

17                      b.      Claim for Intentional Infliction of Emotional Distress

18        While the Court concludes that the discrimination claims are not preempted pursuant to § 9,

19  it is a closer call on the emotional distress claim.  Even though the emotional distress claim is based

20  on the alleged discrimination, the alleged outrageousness of the Union's actions is, in essence,

21  predicated on its status as Ms. Martinez's exclusive collective bargaining representative.  *See*

22  Compl. ¶ 66 (alleging that the Union "engaged in outrageous conduct by discriminating against

23  Plaintiff based on her age and disability and failing to represent Plaintiff's interests after 30 years of

24  membership in the union and despite her seniority for arbitrary, capricious[,] and/or discriminatory

25  reasons").

26        Ms. Martinez contends that her claim nevertheless falls within the exception for preemption

27  articulated by the Supreme Court in *Farmer v. United Brotherhood of Carpenters*, 430 U.S. 290

28  (1977).  In *Farmer*, the Supreme Court noted that it has

1  refused to apply the pre-emption doctrine to activity that . . . "was a
2  merely peripheral concern of the [federal law] [or] touched interests so
   deeply rooted in local feeling and responsibility that, in the absence of
   compelling congressional direction, we could not infer that Congress
3  had deprived the States of the power to act."

4  *Id.* at 296-97.

5      *Farmer*, however, is of limited support to Ms. Martinez.  In *Farmer*, a union member

6  brought a claim for intentional infliction of emotional distress against his union and its officials,

7  alleging that he was a victim of a studied campaign of personal abuse and harassment that included

8  frequent public ridicule, incessant verbal abuse, and discrimination in hiring referrals.  The Supreme

9  Court emphasized that whether there should be preemption typically turns on whether the state has a

10 substantial interest in regulation of the conduct at issue and whether the state's interest threatens

11 undue interference with the federal regulatory scheme.  *See id.* at 297, 300, 302.  The Court

12 ultimately held that the plaintiff's emotional distress claim was not preempted because "[n]o

13 provision of the National Labor Relations Act protects the 'outrageous conduct' complained of by

14 petitioner," *id.* at 302 (noting that "there is no federal protection for conduct on the part of union

15 officers which is so outrageous that 'no reasonable man in a civilized society should be expected to

16 endure it'"), and the state had "a substantial interest in protecting its citizens from the kind of abuse

17 of which [the petitioner] complained."  *Id.*  The Court acknowledged that there was some potential

18 for interference with the federal regulatory scheme but concluded that it was "insufficient to

19 counterbalance the legitimate and substantial interest of the State in protecting its citizens."  *Id.* at

20 304.  The Court indicated that the potential for interference was limited because whether the

21 petitioner suffered severe emotional distress as a result of the respondents' conduct would not be

22 considered by the National Labor Relations Board for any unfair labor practice claim based on the

23 same conduct.  *See id.* at 304.  Likewise, "the state-court tort action [could] be adjudicated without

24 resolution of the 'merits' of the underlying labor dispute."  *Id.*

25     The problem for Ms. Martinez is that, in *Farmer*, the Supreme Court emphasized that there

26 should be preemption where there was

27     a realistic threat of interference with the federal regulatory scheme.
       Union discrimination in employment opportunities cannot itself form
28     the underlying "outrageous" conduct on which the state-court tort

14

United States District Court
For the Northern District of California

> action is based; to hold otherwise would undermine the pre-emption principle.  Nor can threats of such discrimination suffice to sustain state-court jurisdiction.  It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress and anxiety.  *But something more is required before concurrent state-court jurisdiction can be permitted.  Simply stated, it is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.*

*Id.* at 305 (emphasis added).  In the instant case, Ms. Martinez has not alleged outrageous conduct based on anything but the discrimination itself.

The Court thus concludes that the claim for intentional infliction of emotional distress is preempted pursuant to § 9 of the NLRA.[3]

3.  Summary on Preemption

For the foregoing reasons, the discrimination claims are not subject to either § 301 preemption or § 9 preemption.  As for the emotional distress claim, while it is not preempted under § 301, it is preempted under § 9.  The Court therefore dismisses the emotional distress claim, but without prejudice.

C.  State Law Discrimination Claims on the Merits

The Union argues that, even if the discrimination claims are not dismissed on preemption grounds, they should still be dismissed for failure to state a claim for relief.   More specifically, the Union argues that the discrimination claims fail to meet the *Twombly* and *Iqbal* standard because the allegations of discrimination are too conclusory.  The Union acknowledges Ms. Martinez's allegation that the Union provided more favorable representation to younger and nondisabled members in similar circumstances, *see Heard v. Lockheed Missiles & Space Co., Inc.*, 44 Cal. App. 4th 1735, 1755 (1996) (noting that "proof regarding similarly situated employees outside the protected class may be one way of raising an inference of intentional discrimination, [but] it is not

---

[3]  The Union has not argued that Ms. Martinez's FEHA claims are preempted under *Farmer*. Indeed, the Ninth Circuit has indicated that such claims would not be preempted under *Farmer. See Carter v. Smith Food King*, 765 F.2d 916, 921 & n.6 (9th Cir. 1985) (stating that plaintiff's "pendent FEHA claims are not preempted by federal labor law," even though other state tort claims would be).  Moreover, it appears that *Farmer* preemption would not be applicable to the FEHA claims because FEHA "'touche[s] interests . . . deeply rooted in local feeling and responsibility.'"  *Farmer*, 430 U.S. at 296-97.

United States District Court

For the Northern District of California

the only way") (emphasis omitted), but contends still that more specifics are needed in order for there to be a plausible inference of discriminatory intent.

In *Marziano v. County of Marin*, No. C-102740 EMC, 2010 U.S. Dist. LEXIS 109595 (N.D. Cal. Oct. 4, 2010), this Court looked at a similar argument.  It noted:

> Ms. Marziano has done more than make a naked assertion that similarly situated persons were treated more favorably.  She has given some specificity by asserting that similarly situated persons were given the opportunity to telecommute while she was not.  For some courts, that kind of specificity is sufficient.  *See, e.g., Akins-Brakefield v. Philip Envtl. Servs. Corp.*, No. 08-cv-710-DRH, 2010 U.S. Dist. LEXIS 25067, at *34-35 (S.D. Ill. Mar. 17, 2010) (with respect to claim pursuant to Equal Pay Act, taking note of plaintiff's allegations that, inter alia, "she complained to the HR specialist about the fact that she had not been given the same raise as similarly situated male employees, was later given a retroactive raise, but that the raise was still not as much as the raises given to similarly situated male employees"; finding "this sufficient to state claims for willful EPA violations under *Bell* and *Iqbal*"); *Williams v. USW, AFL-CIO, Local 7697*, No. 1:09-cv-743, 2010 U.S. Dist. LEXIS 22295, at *13-14 (S.D. Ohio Mar. 10, 2010) (finding *Twombly* problem where plaintiff failed to allege, *e.g.*, that "Local 7697 treated similarly-situated non-Black employees who had pending grievances more favorably than [he] was treated"; adding that "conclusory" assertion that "'younger workers are treated more favorably'" was "an insufficient 'formulaic recitation of the element[] of a cause of action'"); *Frank v. Potter*, 1:08-CV-00595, 2009 U.S. Dist. LEXIS 83990, at *19-20 (S.D. Ohio Sept. 15, 2009) (concluding that "Plaintiff does more than proffer conclusory allegations that similarly-situated persons received different treatment" – she "identifies her supervisors whom she alleges engaged in discrimination" and the "specific actions they took" and "[s]he alleges that both men and employees of a different race, African-American, were treated differently").
>
> Admittedly, there are other courts who have concluded otherwise.  Some courts have suggested that a general statement that similarly situated employees were treated more favorably even with respect to a specific employment action is not enough – *i.e.*, the example needs to be fleshed out with more details.  *See, e.g., Francis v. Giacomelli*, 588 F.3d 186, 195-96 (4th Cir. 2009) (describing African-American plaintiff's allegation that "defendants have never initiated or undertaken the actions of terminating employment and physically removing [white] employee[s]" as "conclusory and insufficient" and "nothing more than the sort of unadorned allegations of wrongdoing to which *Twombly* and *Iqbal* are directed" in ruling that plaintiff failed to "state a plausible claim for relief"); *Myers v. Maryland Auto. Ins. Fund*, No. CCB-09-3391, 2010 U.S. Dist. LEXIS 80011, at *13 (D. Md. Aug. 9, 2010) (taking note of plaintiff's statement that "'[y]ounger employees did not receive similar negative performance evaluations as Plaintiff, nor were they placed on a "three month action plan"'" but ultimately concluding that this allegations was too conclusory under *Twombly* because it was "unsupported by

United States District Court

For the Northern District of California

any factual allegations, such as the employees to whom it refers, their job titles, or how their performance allegedly was deficient").  Some courts have gone even further and suggested that specific allegations need to be made to demonstrate how the employees are similarly situated.  *See, e.g., DeLoatch v. Harford County Bd. of Educ.*, No. CCB-09-3125, 2010 U.S. Dist. LEXIS 47635, at *5-6 (D. Md. May 14, 2010) (noting that, "[a]lthough the complaint references Ms. Hamilton, it does not allege that she was employed  in a similar capacity, had a comparable criminal history, or when and in what manner her employment was terminated" and so "[t]his allegation is therefore too general to establish that Ms. Hamilton was similarly situated to Ms. DeLoatch or treated more favorably by the Board").

The Court declines to take the latter approach.  The former approach is more reasonable because, as noted by one district court, there is nothing about Federal Rule of Civil Procedure 8 which requires the naming of names.  *See Frank*, 2009 U.S. Dist. LEXIS 83990, at *19 (S.D. Ohio Sept. 15, 2009) (rejecting "Defendant[']s critique[] [of] Plaintiff's Title VII claims on the basis that she has 'failed to allege a single similarly-situated individual'" because "the Court does not find a requirement at the pleadings stage that Plaintiff name names").

*Id.* at *27-30.

With respect to the case at bar, Ms. Martinez should not – as the Court held in *Marziano* – be required to show how the favored union members were similarly situated; nor should she be required to identify their names.  However, the Court ultimately agrees with the Union that her discrimination claims are too conclusory because she has not provided any specifics about what actions the Union took that favored the union members referenced in the complaint.  In the complaint, Ms. Martinez simply refers in general terms to "more favorable treatment and representation."  Compl. ¶¶ 16, 30. The Court therefore dismisses the discrimination claims for failure to state a claim for relief.  The dismissal is without prejudice.

D.     Claim for Breach of Duty of Fair Representation

1.     Statute of Limitations

In addition to the state law claims, Ms. Martinez asserts a federal claim against the Union based on an alleged breach of the duty of fair representation.  Ms. Martinez claims a breach of the duty of fair representation because the Union

fail[ed] to investigate her claims against her employer, [gave her] false and erroneous information and advice, fail[ed] to keep [her] apprised of the status of the union's actions and involvement regarding her

United States District Court

For the Northern District of California

> termination, and fail[ed] to pursue a grievance and/or arbitration on her behalf without good faith and for arbitrary, capricious, and discriminatory reasons.

Compl. ¶ 58.  The Union argues first that the fair representation claim is time barred because the conduct at issue took place at the latest by April 14, 2011, *i.e.*, when Ms. Martinez resigned, but she did not file her lawsuit until March 9, 2012, more than six months later.  While a statute-of-limitations assertion is an affirmative defense, a defendant may still raise a motion to dismiss based on the defense if the running of the limitations period is apparent on the face of the complaint.  *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (stating that, "[i]f the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss").

In the case at bar, the parties do not dispute that there is in fact a six-month limitations period for a fair representation claim.  Under 29 U.S.C. § 160(b), an unfair labor practice charge must be filed with the National Labor Relations Board within six months after the alleged unfair labor practice took place.  *See* 29 U.S.C. § 160(b) (providing that "no complaint shall issue [from the Board] based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made").  "In *Del Costello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983), the Supreme Court concluded that the six-month period for making charges of unfair labor practice to the National Labor Relations Board contained in section 10(b) of the NLRA [*i.e.*, § 160(b)] should be applied to a claim filed in a federal district court for a breach of a union's duty of fair representation." *Kalombo v. Hughes Market, Inc.*, 886 F.2d 258, 259 (9th Cir. 1989).  Under Ninth Circuit law, "the six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). *See, e.g.*, *Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 404 (9th Cir. 1990) (stating that plaintiff's "claims accrued no later than July 13, 1983, the date on which he was informed by a Union representative that the Union would not pursue a grievance on his behalf").  Thus, the question for the Court in the instant case is when Ms. Martinez knew or should have known of the acts or failures to act by the Union.

**United States District Court**
For the Northern District of California

a.      Failure to Investigate Ms. Martinez's Claims

It is not clear from the face of the complaint whether or not the Union's failure to investigate Ms. Martinez's claims is time barred.  The Court needs more information as to what claims the Union failed to investigate; only then can it begin to assess when Ms. Martinez knew or should have known of the failure to investigate.

The Union argues that any failure to investigate must have preceded her resignation on April 14, 2011, but that is not necessarily true.  For example, Ms. Martinez maintains that she did not voluntarily resign but rather that she was constructively discharged.  If Ms. Martinez claims that the Union failed to investigate a claim that she was constructively discharged and on improper grounds, then any investigation or failure to investigate would have had to take place *after* the constructive discharge.  The Union contends that, clearly, Ms. Martinez voluntarily resigned, *see* Mot. at 13, but that is a question of fact that should not be resolved at this juncture of the proceedings.

Given the lack of clarity in the complaint about what claims the Union failed to investigate, the Court cannot conclude that the face of the complaint shows that the fair representation claim is time barred.  On the other hand, because there is a potential statute-of-limitations problem, the Court concludes that a dismissal with leave to amend is appropriate.  In the amended complaint, Ms. Martinez must include specific allegations about what claims the Union failed to investigate and when she learned of this failure.

b.      Giving Ms. Martinez False and Erroneous Information and Advice

Similar to above, the Union argues that, if it gave Ms. Martinez any false or erroneous information or advice, it had to have acted prior to her resignation on April 14, 2011.  But, as above, it is possible that the Union's challenged conduct took place after the resignation.  For example, if Ms. Martinez claims that she was given false and erroneous information and advice about how to proceed with a grievance based on a constructive discharge, that would have had to take place after the resignation.  Similar to above, the Court needs more specifics about what false and erroneous information and advice the Union gave in order for the Court to evaluate whether there is a time bar.  The Court acknowledges that, in her opposition, Ms. Martinez indicates that the false and erroneous information and advice was given during the termination meeting held on April 14, 2011.  *See*

19

United States District Court

For the Northern District of California

1  Opp'n at 8 (indicating that the Union gave Ms. Martinez "false and erroneous information and

2  advice, *during the termination meeting*, held on April 14, 2011") (emphasis added).  But as the

3  opposition is not the complaint itself, the Court cannot say that, on the face of the complaint, there is

4  a time bar.  The Court thus dismisses this part of the fair representation claim but with leave to

5  amend.  Similar to above, Ms. Martinez must, in her amended complaint, include specific allegations

6  about what false and erroneous information and advice was given, when such information and

7  advice was given, and when she learned that the information and advice was false and erroneous.

8                              c.        Failure to Keep Ms. Martinez Apprised

9         Ms. Martinez also claims a breach of the duty of fair representation because the Union

10  "fail[ed] to keep [her] apprised of the status of the union's actions and involvement regarding her

11  termination."  Compl. ¶ 58.  As above, the Court needs more specificity from Ms. Martinez in order

12  to evaluate whether there is a time bar here.  The Court therefore dismisses this part of the fair

13  representation claim but with leave to amend.  In the amended complaint, Ms. Martinez must include

14  allegations about what specifically the Union failed to keep her apprised about and when she learned

15  of this failure.

16                              d.        Failure to Pursue a Grievance and/or Arbitration

17         Finally, Ms. Martinez asserts a breach of the duty of fair representation on the basis that the

18  Union "fail[ed] to pursue a grievance and/or arbitration on her behalf."  Compl. ¶ 58.  As a

19  preliminary matter, the Court takes note that it is not clear which grievance the Union allegedly

20  failed to pursue.  Thus, once again, additional specificity is needed in order for the Court to evaluate

21  the statute-of-limitations argument.  The Court therefore dismisses this part of the fair representation

22  claim but with leave to amend.

23         The Court notes that, to the extent Ms. Martinez may claim that that the Union failed to

24  pursue a grievance on the alleged constructive discharge, then the Court may have to address the

25  Union's argument that the statute of limitations began to run on her date of "resignation" – *i.e.*, April

26  14, 2011.  If Ms. Harris asked the Union to pursue a grievance because the "resignation" was really

27  a constructive discharge, then her claim would begin to run only when she knew or should have

28  known that the Union was not going to pursue a grievance on a constructive discharge theory.  *See*

United States District Court
For the Northern District of California

1  *Harris*, 897 F.2d at 404 (stating that plaintiff's "claims accrued no later than July 13, 1983, the date

2  on which he was informed by a Union representative that the Union would not pursue a grievance on

3  his behalf").

4         The Union takes the position that, unless it actually "promised to represent [her] and then

5  failed to do so," then she knew or should have known that the Union would not do anything as of the

6  date of her resignation.  *White v. Sloan*, No. 08-3606 SECTION I/5, 2009 U.S. Dist. LEXIS 76915,

7  at *6 (E.D. La. Aug. 26, 2009).  While the *White* case does support the Union's position, it is not

8  binding authority on this Court.  Moreover, the approach taken by the *White* court is not persuasive.

9  If anything, given a union's status as the exclusive collective bargaining representative of its

10  members, it would seem that the operating presumption should be that the union *would* represent a

11  member, absent an indication from the union that it would not take action on her behalf.[4]  As the

12  Ninth Circuit noted in *Galindo*, "where a union decides not to file a grievance[,] the cause of action

13  generally accrues when the employee learns or should have learned of the union's decision."

14  *Galindo*, 793 F.2d at 1509-10.

15         e.    Summary

16         The Court dismisses the fair representation claim in its entirety because of a potential time

17  bar.  More specificity is needed from Ms. Martinez in order to establish that the statute of limitations

18  is not a bar to her claim.  Ms. Martinez has leave to amend her claim and must include in her

19  amended complaint specifics about what the Union's alleged failures were and when she learned of

20  those failures.

21         2.    Claim for Breach of Duty of Fair Representation on the Merits

22         The Court also dismisses without prejudice the fair representation claim because – with one

23  exception – Ms. Martinez has failed to allege how the Union's actions that constituted a breach of its

24

25

---

26      [4]  The other case cited by the Union, *Banks v. AmerenUE*, No. 4:05CV00477 JCH, 2005 U.S.

27  Dist. LEXIS 25418 (E.D. Mo. Sept. 8, 2005), is not on point.  In *Banks*, the court does not state what the factual allegations underlying the plaintiff's fair representation claim were.  There is no indication that the plaintiff asked the union to pursue a grievance on the resignation because it was

28  really a constructive discharge and that the union thereafter failed to pursue a grievance.

United States District Court

For the Northern District of California

duty were arbitrary, discriminatory, on in bad faith.[5]  *See Simo*, 316 F.3d at 981 (noting that "[a] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith") (internal quotation marks omitted).  The Union is correct in arguing that, "[t]o survive a Rule 12(b)(6) motion, a duty of fair representation plaintiff must at least allege that the Union engaged in arbitrary, discriminatory or bad faith conduct and *offer some factual support* for such claims."  *Goodman v. Port Auth. of N.Y. & N.J.*, No. 10 Civ. 8352, 2011 U.S. Dist. LEXIS 86010, at *15 (S.D.N.Y. Aug. 4, 2011) (emphasis added).  Thus, the bulk of Ms. Martinez's fair representation claim is flawed.  For example, Ms. Martinez alleges that the Union gave her false and erroneous information and advice but there is no allegation that the Union *knowingly* did so.  Without such an additional allegation, the Union could have negligently given false and erroneous information, which is not sufficient to sustain a claim for breach of the duty of fair representation.  *See Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989) (stating that "[a] union does not breach its duty of fair representation . . . through simple negligence or a mistake in judgment").  *See, e.g.*, *Stevens v. Moore Business Forms*, 18 F.3d 1443, 1447 (9th Cir. 1994) (stating that "negligence in processing a grievance is insufficient to constitute a breach of the duty").  Similarly, there is nothing to indicate that the Union's failure to keep Ms. Martinez apprised was anything but the result of simple negligence.  There is no suggestion, for example, that the Union recklessly failed to disclose critical information to Ms. Martinez.  *See Robesky v. Qantas Empire Airways, Ltd.*, 573 F.2d 1082, 1088-90 (9th Cir. 1978) (indicating that, even though "simple negligence" does not

---

[5]        A union's actions are arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational."  A union's conduct is discriminatory when the union "without a legitimate purpose, take[s] action favoring some of its members at the expense of others."  A union acts in bad faith when it "acts with an improper intent, purpose, or motive. Bad faith encompasses fraud, dishonesty, and other intentionally misleading conduct."

*Pilchman v. American Fed'n & Mun. Emples.*, No. 10 CV 4976 (KMW), 2011 U.S. Dist. LEXIS 111538, at *23-24 (S.D.N.Y. Sept. 29, 2011).  *See generally Beck v. UFCW, Local 99*, 506 F.3d 874, 880 (9th Cir. 2007) (discussing the arbitrary, discriminatory, and/or in bad faith standard).

United States District Court

For the Northern District of California

1    violate the duty of fair representation, recklessness can be considered arbitrary – and therefore

2    actionable – conduct).

3         As for the failure to pursue a grievance, a union is barred only from ignoring a meritorious

4    grievance or perfunctorily processing that grievance. *See Vaca v. Sipes*, 386 U.S. 171, 191 (1967)

5    ("accept[ing] the proposition that a union may not arbitrarily ignore a meritorious grievance or

6    process it in perfunctory fashion"); *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir.

7    1985) (stating that "a union may not arbitrarily ignore a meritorious grievance nor process it

8    perfunctorily"). "A union, however, need not process a meritless grievance." *Galindo*, 793 F.2d at

9    1513; *see also Landry*, 880 F.2d at 852 (stating that a union "has an obligation to prosecute a

10   grievance with reasonable diligence unless it decides in good faith that the grievance lacked merit or

11   for some other reason should not be pursued"). Assuming that Ms. Martinez is challenging the

12   failure to pursue the grievance on the constructive discharge, Ms. Martinez has failed to allege that

13   the failure to pursue the grievance constituted a breach of the duty of fair representation because the

14   grievance was meritorious. She has also failed to allege with any specificity how the grievance was

15   meritorious.

16        The only part of the fair representation claim as pled that is not problematic is that part of the

17   claim based on the Union's alleged failure to investigate her claims. While a failure to pursue a

18   grievance may be justifiable because, *e.g.*, it lacks merit, there is no rational basis for failing even to

19   investigate a union member's claim. *See Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d

20   1390, 1395 (9th Cir. 1985) (stating that "[a] union's duty of fair representation includes the duty to

21   perform some minimal investigation, the thoroughness of which varies with the circumstances of the

22   particular case"; adding that "[t]he union must exercise special care in handling a grievance which

23   concerns a discharge, because it is the most serious sanction an employer can impose"); *Peterson v.

24   Kennedy*, 771 F.2d 1244, 1253-54 (9th Cir. 1985) (indicating that a union handles a grievance in an

25   improper perfunctory manner when it "fail[s] to conduct a 'minimal investigation' of a grievance

26   that is brought to its attention"); *Thomas v. Little Flower For Rehab. & Nursing*, 793 F. Supp. 2d

27   544, 548 (E.D.N.Y. 2011) (stating that, "[i]nsofar as a 'minimal investigation' can constitute a

28

breach of the duty of fair representation, an allegation of a failure to perform any investigation after notice of a grievance plausibly alleges a breach of the duty of fair representation.").

### III.   CONCLUSION

For the foregoing reasons, the Court grants the Union's motion to dismiss.  More specifically, the Court rules as follows:

(1)     The state law discrimination claims are not preempted under § 301 of the LMRA or § 9 of the NLRA.  However, the claims are dismissed on the merits because Ms. Martinez has simply stated in conclusory terms that other union members received more favorable treatment and representation.  Ms. Martinez has leave to amend.

(2)     The emotional distress claim is preempted pursuant to § 9 of the NLRA.  The claim is dismissed without prejudice.  Ms. Martinez has leave to amend but, in her amended complaint, she must include allegations to put the claim within the *Farmer* exception to preemption.

(3)     The fair representation claim is dismissed with leave to amend.  In the amended complaint, Ms. Martinez must include specific allegations to address the potential time bar.  In addition, she must include specific allegations from which it may be inferred that the Union's acts were arbitrary, discriminatory, or undertaken in bad faith.

The amended complaint shall be filed within thirty days from the date of this order.

This order disposes of Docket No. 7.


IT IS SO ORDERED.


Dated: July 5, 2012

_____
EDWARD M. CHEN
United States District Judge